ALLAN E. ANDERSON (SBN 133672)
allan.anderson@arentfox.com
DAVID BAYLES (SBN 208112)
david.bayles@arentfox.com
**ARENT FOX LLP**
555 West Fifth Street, 48th Floor
Los Angeles, CA 90013-1065
Telephone: 213.629.7400
Facsimile: 213.629.7401

ROSS J. CHARAP (SBN
(*Pro Hac Vice*)
ross.charap@arentfox.com
**ARENT FOX LLP**
1301 Avenue of the Americas, 42nd Floor
New York, NY 10019
Telephone: 212.484.3900
Facsimile: 212.484.3990

Attorneys for Defendant and
Counterclaimant SOPHIA A. MODU

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NOTORIOUS B.I.G. LLC, a Delaware limited liability company, | Case No. 19-cv-1946-JAK-KS |
| Plaintiff, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |
| v. | |
| Yes. Snowboards, Nidecker Group, Chi Modu, an individual, Nidecker US, Inc., a Washington Corporation, Nidecker SA, a Switzerland Corporation, DOES 3-8, | **[Declarations of Sophia A. Modu, Enechi Modu and Ross Charap filed concurrently herewith and in support hereof]** |
| Defendant. | |
| | Date: April 18, 2022 |
| CHI MODU, an individual, | Time: 8:30 a.m. |
| | Judge: The Hon. John A. Kronstadt |
| Counterclaimant, | Courtroom: 10B |
| v. | Magistrate Judge: Karen L. Stevenson |
| NOTORIOUS B.I.G LLC, a Delaware limited liability company, | Complaint Filed: March 15, 2019 |
| Counterclaim-Defendant | |

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

Case No. 19-cv-1946-JAK-KS

MPA ISO OPPOSITION TO PL'S
MOTION FOR PRELIM. INJUNCTION

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ........................................................................................ 5

II.  STATEMENT OF FACTS ......................................................................... 6

    A.   Legendary Hip Hop Photographer Chi Modu Created Numerous Iconic Images of Mr. Wallace and Other Hip Hop Artists .................. 6

    B.   Mr. Wallace and His Agents and Successors Allowed Commercial Use of Mr. Wallace's Images by Mr. Modu for Decades ....................................................................................................... 6

    C.   The Parties Have a Licensing History Which Broke Down and the Instant Action Followed ................................................................. 6

    D.   Mrs. Modu Owns the Copyrights in the Photographs that Are the Subject of the Action ........................................................................ 7

    E.   Plaintiff's New Jersey Right of Publicity Claim Is Merely a Thinly Disguised Copyright Claim ......................................................... 7

III. ARGUMENT .............................................................................................. 9

    A.   Plaintiff Cannot Show a Likelihood of Success on the Merits Because Its Claim Is Preempted by the Copyright Act ....................... 9

    B.   Plaintiff Cannot Show a Likelihood of Success on the Merits Because It Has Acquiesced in All of the Subject Uses and the Claims Are Barred by Laches ............................................................ 15

    C.   Plaintiff Cannot Show a Likelihood of Success on the Merits Because No Use About Which Plaintiff Complains Is Likely to Cause Damage to the Commercial Value of Mr. Wallace's Persona ............................................................................................... 16

    D.   Plaintiff Cannot Show Irreparable Harm Absent Entry of a Preliminary Injunction ..................................................................... 17

    E.   Plaintiff Cannot Show that the Balance of Equities Favors Entry of a Preliminary Injunction ............................................................... 17

IV.  CONCLUSION ......................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Downing v. Abercrombie & Fitch*,
    265 F.3d 994 (9th Cir. 2001) ................................................................. 10, 11, 13

*Dryer v. NFL*,
    814 F.3d 938 (8th Cir. 2016) ........................................................................ 13, 14

*In re Jackson*,
    972 F.3d 25 (2d Cir. 2020) .......................................................................... 13, 14

*John Wright, Inc. v. Casper Corp.*,
    419 F. Supp. 292 (E.D. Pa. 1976) ...................................................................... 15

*Laws v. Sony Music Entm't, Inc.*,
    448 F.3d 1134 (9th Cir. 2006) ...................................................................*passim*

*Maloney v. T3Media, Inc.*,
    853 F.3d 1004 (9th Cir. 2017) ...................................................................*passim*

*McNeil Labs, Inc. v. Am. Home Prods. Corp.*,
    416 F. Supp. 804 (D.N.J. 1976) ......................................................................... 15

*Estate of Presley. v. Russen*,
    513 F. Supp. 1339 (D.N.J. 1981) ................................................................. 15, 16

*Prima v. Darden Rests., Inc.*,
    78 F. Supp. 2d 337 (D.N.J. 2000) ...................................................................... 16

**Statutes**

17 U.S.C. § 101 ......................................................................................................... 10

17 U.S.C. §§ 102 and 103 ........................................................................................... 9

17 U.S.C. § 106 ........................................................................................................... 9

Copyright Act ........................................................................................... 5, 9, 11, 18

**Other Authorities**

H.R. Rep. No. 94–1476 (1976)......................................................................................9

Publicity, 92 Notre Dame L. Rev. 1539, 1548 (2017) ............................................14

## I.      **INTRODUCTION**

Plaintiff Notorious B.I.G.'s ("Plaintiff's") motion for preliminary injunction must fail for a number of reasons. Plaintiff's motion is based solely upon its Fourth Cause of Action in the First Amended Complaint for alleged violation of New Jersey right of publicity common law. *See* Plaintiff's First Amended Complaint ("FAC"), DKT 32; *see also* Plaintiff's Memorandum in Support of Motion for Preliminary Injunction, DKT 181 at 7. To obtain a preliminary injunction, Plaintiff must show, among other things, a likelihood of success on the merits on its cause of action. Plaintiff cannot make the required showing because: (a) Plaintiff's claim is preempted by the Copyright Act, (b) Plaintiff is barred by laches and acquiescence in the subject uses, and (c) no use about which Plaintiff complains is likely to cause damage to the commercial value of Mr. Wallace's persona.

In addition, to obtain a preliminary injunction Plaintiff must also show: (d) irreparable harm, and (e) that the balance of equities favor the Plaintiff and the injunction. However, Plaintiff will also not be able to meet these requirements. All of the images about which Plaintiff complains are iconic photographs by legendary hip hop photographer Chi Modu. Mr. Modu was the owner of the copyrights in the photos until his recent death and now his widow defendant Mrs. Modu is the owner. The display and sale of the subject iconic photos are increasing the value of Mr. Wallace's persona—not causing any harm, and they are certainly not causing irreparable harm. On the other hand, Plaintiff's sole purpose and motivation in bringing the right of publicity claim in this action is to attempt to control Mrs. Modu's lawful exercise of her copyrights and, if possible, unlawfully obtain the copyrights. Accordingly, the balance of equities also clearly favors her and prevents entry of a preliminary injunction.

For all the foregoing reasons, as discussed more particularly below, the motion for preliminary injunction should be denied.

## II.   STATEMENT OF FACTS

### A.   Legendary Hip Hop Photographer Chi Modu Created Numerous Iconic Images of Mr. Wallace and Other Hip Hop Artists

Chi Modu was a renowned Hip Hop photographer since the 1990's who helped legitimize hip hop as an important musical genre and who boosted the careers of many rappers, including Mr. Wallace. Sophia A. Modu Declaration ("Modu Decl.") ¶ 4. Modu took an iconic photograph of Mr. Wallace in front of the World Trade Center in the 90's that remains one of the most popular photographs of Mr. Wallace. Modu Decl. ¶ 10. Modu also worked with the likes of Tupac Shakur, Snoop Dogg, Puff Daddy, Easy E, and Dr. Dre, amongst others during his rise to success. Modu Decl. ¶ 9.

### B.   Mr. Wallace and His Agents and Successors Allowed Commercial Use of Mr. Wallace's Images by Mr. Modu for Decades

The Wallace Family approved of Modu's use of Mr. Wallace's photographs for over 20 years and never claimed any rights to the iconic World Trade Center photograph. Modu Decl. ¶¶ 11, 33. Mr. Wallace's family knew of Modu's licensing acts regarding Mr. Wallace's images since 1996 both in the United States and abroad and never once objected to such licensures until this lawsuit. Modu Decl. ¶ 15. Modu also owned and operated hiphopimages.com where he offered images of Mr. Wallace without objection from Plaintiff. Modu Decl. ¶ 17.

### C.   The Parties Have a Licensing History Which Broke Down and the Instant Action Followed

From 2011 through 2018, Mr. Wallace's marketing company, Remrylie, Inc., licensed Chi Modu's photos of Mr. Wallace for three thousand dollars per photo per year in 2011, 2013, and 2015. Modu Decl. ¶ 16. Mr. Modu continued to license these photos to other parties during the terms of the licenses without objection from Plaintiff. Modu Decl. ¶ 17. In 2017, Mr. Modu learned that the licenses he was granting for a few thousand dollars per photo of Mr. Wallace were generating

1    hundreds of thousands, perhaps millions, of dollars in revenue for licensees. Modu
2    Decl. ¶¶ 18, 19. Upon discovery that his photos were being undervalued, Mr. Modu
3    approached the owners of Remrylie in 2018 to discuss the renewal of the 2015 license
4    for a fee increase. Modu Decl. ¶ 20. The license expired on December 31, 2018, and
5    negotiations for renewal proved to be fruitless as Plaintiff proceeded to file suit against
6    Modu in 2019. Modu Decl. ¶¶ 20, 21.

7         D.    **Mrs. Modu Owns the Copyrights in the Photographs that Are the**
8              **Subject of the Action**

9         The FAC focuses on Modu's use of one specific image: Mr. Modu's 1996
10   photograph of Mr. Wallace in front of the World Trade Center towers. *See* FAC, ¶ 27.
11   In addition to the foregoing image, in the motion for preliminary injunction Plaintiff
12   complains about three other images of Mr. Wallace photographed by Mr. Modu: (a)
13   Mr. Wallace wearing a white jacket (Declaration of Staci Riordan, Exhibit B, DKT
14   181-2 at 27); (b) Mr. Wallace "Watch Your Step" (*Id*., at 30); and (c) Mr. Wallace
15   close up known as "Biggie 5001" (*Id*. at 34). After Chi Modu's death, Mrs. Modu
16   became the lawful copyright owner of all four of these photographs, among others.
17   Modu Decl. ¶¶ 14, 26, 37.

18        E.    **Plaintiff's New Jersey Right of Publicity Claim Is Merely a Thinly**
19              **Disguised Copyright Claim**

20        Plaintiff's FAC and motion for preliminary injunction ostensibly claim a right
21   of publicity under New Jersey common law in the four subject photos and violation
22   of those rights by defendant. *See* FAC, DKT 32 ¶¶ 61-70; *see also* Plaintiff's
23   Memorandum in Support of Motion for Preliminary Injunction, DKT 181 at 7. In fact,
24   Plaintiff alleges in the FAC that "posters, prints, and other artwork" that
25   display  Mr.Modu's iconic photographs of Mr. Wallace are the "Infringing Products"
26   violating Plaintiff's New Jersey common law rights of publicity. *See* FAC, DKT 32 ¶
27   6 (defining "posters, prints, and other artwork" as the "Infringing Products") and ¶ 64
28   (identifying the subject of the New Jersey common law claim as "Defendants' use of

Wallace's image in such a prominent manner on their Infringing Products …"). Similarly, Plaintiff alleges in the motion for preliminary injunction that "NFTs" that display Mr. Modu's iconic photographs of Mr. Wallace violate Plaintiff's New Jersey common law rights of publicity. *See* Plaintiff's Memorandum in Support of Motion for Preliminary Injunction, DKT 181 at 5. The NFTs about which Plaintiff complains are merely digital copies of the iconic photographs by Mr. Modu of Mr. Wallace with accompanying digital certificates of authenticity. Modu Decl. ¶ 34; Declaration of Ross Charap ("Charap Decl."), Exh. A.

As demonstrated below, Plaintiff's attack on the posters, prints, artwork and NFTs bearing Mr. Modu's iconic photographs of Mr. Wallace is not, in fact, a proper subject of a right of publicity claim. Rather, Plaintiff's attack on the subject posters, prints, artwork and NFTs demonstrate the true purpose of the FAC and the action: to allow Plaintiff to so totally interfere with Mrs. Modu's lawful exercise of her copyrights as to be able to misappropriate them.

Plaintiff's true intent is further demonstrated by the actions of Plaintiff's agent Rick Barlowe. Mr. Barlowe contacted Mrs. Modu's sister-in-law, Enechi Modu, after Mr. Modu's death, urging her to encourage Mrs. Modu to settle. Mr. Barlow informed Enechi Modu that it was in her interest to settle the case and threatened that Mr. Wallace's family would continue to take actions to prevent anyone from d oing business with Chi or his estate. Enechi Modu Declaration ("Enechi Decl.") ¶ 12. He then stated that in order to end the suit, they would settle for the transfer of Chi's copyrights in all of his pictures of Mr. Wallace to Mr. Wallace's estate. *Id*. Of course, an order transferring from Mrs. Modu to Plaintiff her copyrights in the subject photographs is not an available remedy under the New Jersey right of publicity claim, or any of the claims in the FAC. The FAC, the motion for preliminary injunction and the actions of Mr. Barlowe are all a bullying effort against Mrs. Modu perpetrated through unlawful interference with Mr. Modu's (now Mrs. Modu's) copyrights.

The motion for preliminary injunction should be denied for all the reasons set forth below.

## III.   ARGUMENT

### A.   Plaintiff Cannot Show a Likelihood of Success on the Merits Because Its Claim Is Preempted by the Copyright Act

The Copyright Act (hereinafter the "Act") grants to copyright owners the exclusive right to display, perform, reproduce, or distribute copies of a copyrighted work, to authorize others to do those things, and to prepare derivative works based upon the copyrighted work. *See* 17 U.S.C. § 106. "The copyright, in other words, gives the owner 'the right to control the work,' including the decision whether or not to make the work available to the public." *Maloney v. T3Media, Inc*., 853 F.3d 1004, 1010 (9th Cir. 2017), citing *Laws v. Sony Music Entm't, Inc.,* 448 F.3d 1134, 1137 (9th Cir. 2006).

"Section 301 of the Act seeks 'to preempt and abolish any rights under the common law or statutes of a State that are equivalent to copyright and that extend to works,' so long as the rights fall 'within the scope of the Federal copyright law.'" *Maloney,* 853 F.3d at 1010, citing H.R. Rep. No. 94–1476, at 130 (1976). To determine preemption, the Court must decide "whether the 'subject matter' of the state law claim falls within the subject matter of copyright as described in 17 U.S.C. §§ 102 and 103" and "whether the rights asserted under state law are equivalent to the rights contained in 17 U.S.C. § 106, which articulates the exclusive rights of copyright holders." *Maloney*, 853 F.3d 1010, citing *Laws*, 448 F.3d at 1138.

Plaintiff's motion for preliminary injunction relies solely on its fourth claim for relief for violation of New Jersey rights of publicity. Plaintiff summarizes its New Jersey common law claim as the "right for protection of a person's name and likeness against misappropriation by others for commercial gain." *See* Plaintiff's Memorandum of Points and Authorities, DKT 181 at 7. A claim concerning the "right for protection of a person's name and likeness against misappropriation by others for

commercial gain," arising from the duplication of entire photographs, falls within the test for preemption set forth in *Laws* and *Maloney*. *See Laws*, 448 F.3d at 1137; *see also Maloney*, 853 F.3d at 1011 (photographs "are expressive 'pictorial' works to which '[a] photographer contributes some original elements' [and] [t]here is also no doubt that a photograph is 'sufficiently permanent' to permit it to be perceived 'for more than transitory duration." 17 U.S.C. § 101 [accordingly] [t]he 'subject matter' of the state law claim[s]'—the photographs—therefore appears to fall within the subject matter of copyright."). To meet the test where a copyrighted photograph is at issue, "[t]he crux … is deciding when a publicity-right claim seeks to vindicate misuse of an individual's likeness, as opposed to merely interfering with the distribution, display, or performance of a copyrighted work." *Maloney*, 853 F.3d at 1012-13.

The Court in *Maloney* examined several cases to determine whether likenesses were being misused or whether the right of publicity plaintiff was interfering with copyrights. The Court noted that in *Downing v. Abercrombie & Fitch*, 265 F.3d 994 (9th Cir. 2001), the publicity-right claim was permitted to proceed because of the unauthorized "use of the [plaintiffs'] likenesses" to advertise Abercrombie products, and the creation of "t-shirts, exactly like those worn by the [plaintiffs] in the photograph, for sale" in Abercrombie's catalog. *Maloney*, 853 F.3d at 1013, citing *Downing*, 265 F.3d at 1003. Importantly, the court in *Maloney* noted that "The plaintiffs (in *Downing*) sustained injury to their individual "personas" because ***their likenesses were exploited commercially*** without their consent … [t]he plaintiffs were not seeking to use the right of publicity simply to prevent 'publication' of an artistic, visual work. *Maloney*, 853 F.3d at 1013 (emphasis added).

The analysis of *Downing* by the Ninth Circuit in *Laws* is also instructive. The Ninth Circuit observed that "Abercrombie ***went well beyond the mere republication of the photograph*** .... Rather, it published the photo in connection with a broad surf-themed advertising campaign, identified the plaintiffs-surfers by name, and offered for sale the same t-shirts worn by the plaintiffs in the photo." *Laws*, 448 F.3d at 1141

(emphasis added). Importantly, the Ninth Circuit indicated that "[Abercrombie] had suggested that the surfers had endorsed Abercrombie's t-shirts. Accordingly, [*Downing*] concluded that 'it is not the publication of the photograph itself ... that is the basis for [plaintiffs'] claims, but rather, it is the use of the [plaintiffs'] likenesses and their names pictured in the published photograph.'" *Laws*, 448 F.3d at 1141, quoting *Downing*, 265 F.3d at 1003. In sum, the Ninth Circuit has held that:

> "[The] misuse of an individual's likeness is the 'basis' of a publicity-right claim when the name or image ***is exploited*** in advertising or on merchandise. It correspondingly implies that ***one's likeness does not form the basis of a publicity-right claim when "the tort action challenges control of the artistic work itself" … or involves "the mere republication of the photograph[.]"***

*Maloney*, 853 F.3d at 14 (emphasis added), citing *Laws*, 448 F.3d at 1141-42. Stated another way, in the Ninth Circuit:

> "[A] publicity-right claim may proceed when a likeness is used non-consensually on merchandise or in advertising. ***But where a likeness has been captured in a copyrighted artistic visual work and the work itself is being distributed for personal use, a publicity-right claim is little more than a thinly disguised copyright claim because it seeks to hold a copyright holder liable for exercising his exclusive rights under the Copyright Act.***"

*Maloney*, 853 F.3d at 1016 (emphasis added).

As set forth above and demonstrated in the FAC and Plaintiff's Memorandum in Support of Motion for Preliminary Injunction, Plaintiff alleges an ostensible right of publicity claim, but in truth is merely interfering with Mrs. Modu's copyrights. All of the alleged "Infringing Products" in the FAC are "mere republication[s]" of the iconic photographs of Mr. Wallace by Mr. Modu, namely duplicates distributed as "posters, prints, and other artwork." *See* FAC, ¶ 6 (defining "posters, prints, and other

artwork" as the "Infringing Products") and ¶ 64 (identifying the subject of the New Jersey common law claim as "Defendants' use of Wallace's image in such a prominent manner on their Infringing Products …"). The principal focus of the motion for preliminary injunction is a complaint about "NFTs." *See* Plaintiff's Memorandum in Support of Motion for Preliminary Injunction, DKT 181 at 5. The NFTs are merely digital copies of the iconic photographs by Mr. Modu of Mr. Wallace with accompanying digital certificates of authenticity. Modu Decl. ¶ 34.

It is beyond dispute that, in the posters, prints, artwork and NFTs, "where [Mr. Wallace's] likeness has been captured in a copyrighted artistic visual work [i.e., Mr. Modu's iconic photographs] and the work itself is being distributed for personal use," the right of publicity claim is preempted. *Maloney*, 853 F.3d at 1016. Accordingly, Plaintiff's Motion for Preliminary Injunction must fail as to all of the foregoing uses on the basis of copyright preemption.[1]

As pointed out in the Motion for Preliminary Injunction, Mrs. Modu controls a website, hiphopimages.com, which offers the aforementioned posters, prints and NFTs, but it also offers shower curtains and skate board decks. Pages from the website are attached as Exhibit B to the Declaration of Staci Riordan. *See* DKT. 181-2.

The images on the shower curtains and skate board decks are reproductions of photographs by Mr. Modu. The only images of Mr. Wallace on those products are on pages 27 and 40 of Exhibit B to the Declaration of Staci Riordan (which exact pages are duplicated later in the Exhibit). All of the other images in Exhibit B to the Declaration of Staci Riordan are images of other hip hop artists and celebrities or

---

[1] There is a second step to the preemption inquiry which is also satisfied here for the same reasons listed above. As explained in *Maloney*, "To survive preemption, the state cause of action must protect rights which are qualitatively different from the copyright rights. The state claim must have an extra element which changes the nature of the action." *Maloney*, 853 F.3d at 1019, *citing Laws*, 448 F.3d at 1143. Where, as here, there is no use of the subject likenesses, independent of the display, reproduction, and distribution of the copyrighted material in which they are depicted, the second step is also met. *See Maloney*, 853 F.3d at 1019.

Mr. Modu's iconic photographs of Mr. Wallace duplicated for distribution on posters. The pages of Exhibit B from the website demonstrate Mr. Modu's legendary work as an artist, displaying many of the iconic images he captured. The website was Mr. Modu's website and now it is Mrs. Modu's website. The website is equivalent to an online catalog of a select group of Mr. Modu's photographs, with different ways in which he (and now Mrs. Modu) have authorized that his photographs may be duplicated and distributed.

There is no suggestion on the website that the hip hop artists or their authorized representatives are sponsoring either the website or the sales of the shower curtains or skate board decks. There is no use of Mr. Wallace's or another artist's image to advertise either the website, or the sale of the shower curtains or skate board decks. Consistent with the law set forth in *Maloney*, *Laws* and *Downing*, the image of Mr. Wallace is not being "exploited" on the shower curtain or skate board deck. *Maloney*, 853 F.3d at 1014, citing *Laws*, 448 F.3d at 1141-1142. Rather, these duplications of the entire iconic images by Mr. Modu are merely an "expressive" duplication of iconic images for which the Modus own the copyrights. *See Maloney*, 853 F.3d at 1017, citing *Dryer v. NFL*, 814 F.3d 938, 943 (8th Cir. 2016) ("[w]hen a right-of-publicity suit challenges the ***expressive, non-commercial use of a copyrighted work***, ...***that suit seeks to subordinate the copyright holder's right to exploit the value of that work to the plaintiff's interest in controlling the work's dissemination***") (emphasis added). The ***true*** intention of the suit, to control the Modu's rights as the copyright holders, and misappropriate those rights, if possible, is set forth above.

The Second Circuit's approach in *In re Jackson*, 972 F.3d 25 (2d Cir. 2020), to evaluating copyright preemption of right of publicity claims, illustrates the importance of the purpose of the particular claim asserted. The Court concluded that a state's interest in right of publicity claims to protect consumers from deception in the commercial marketplace was sufficiently substantial. *Id.* at 37. Claims that

"prohibit the sale of goods whose value to consumers consists predominately of the unauthorized exploitation of a person's valuable persona" are sufficiently substantial. *Id*. In other words, "[t]he more substantial the state law interest involved in the suit, the stronger the case to allow that right to exist side-by-side with the copyright interest, notwithstanding its capacity to interfere, even substantially, with the enjoyment of the copyright." *In re Jackson*, 972 F.3d at 37-38, citing Rebecca Tushnet, Raising Walls Against Overlapping Rights: Preemption and the Right of Publicity, 92 Notre Dame L. Rev. 1539, 1548 (2017) (arguing that "a right of publicity that furthers the protection of consumers, reputation, or privacy ... [should] not be preempted").

The Second Circuit then contrasted those substantial rights with "less substantial … state law rights," where "the more the invocation of the state right amounts to little more than camouflage for an attempt to exercise the control over the exploitation of a copyright, the more likely that courts will find the state law claim to be preempted." *In re Jackson*, 972 F.3d at 38. The Court cited *Dryer*, 814 F.3d at 943, noting that, where a right of publicity claim does not further the "state's interest in protecting consumers," "that suit seeks to subordinate the copyright holder's right to exploit the value of [the] work to the plaintiff's interest in controlling the work's dissemination" under state law, and is therefore preempted). *In re Jackson*, 972 F.3d at 38.

In *In re Jackson*, the plaintiff mentioned an artist's name to identify him as the artist on a song sample, and his use of the sound of the artists' voice in the defendants' mixtape, to which the defendant owned the copyrights. The Court concluded **the use did not** appropriate Jackson's reputation, prestige, social or commercial standing or other values of his name or likeness. *In re Jackson*, 972 F.3d at 38. Likewise here, under the totality of the circumstances presented above, Mr. Modu and now Mrs. Modu's duplication of Mr. Modu's iconic photographs onto shower curtains and skate board decks does not misappropriate Mr. Wallace's persona: (a) offering

the items with Mr. Modu's iconic images on Mrs. Modu's website does not confuse consumers; (b) the value of the items is not "predominately" the image of Mr. Wallace; and (c) at a minimum, the value of the items derive from the synergy created between the iconic image, the legendary photographer and the successful hip hop artist who owes the endurance of his legacy, at least in part, to his photographer.

Accordingly, Plaintiff's motion for preliminary injunction must also fail on the basis of copyright preemption as to the shower curtains and skate board decks on Mrs. Modu's website bearing the reproduction of Mr. Modu's copyrighted photographs.[2]

**B.**   **Plaintiff Cannot Show a Likelihood of Success on the Merits Because It Has Acquiesced in All of the Subject Uses and the Claims Are Barred by Laches**

Equitable defenses such as laches and acquiescence are defenses to a New Jersey common law right of publicity claim. *See Estate of Presley. v. Russen*, 513 F. Supp. 1339, 1351 (D.N.J. 1981). "[P]reliminary injunctive relief has been held barred by laches...." *Id.* at 1351 (citations omitted). "[T]he laches defense is reserved for those rare cases where a protracted acquiescence by plaintiff induces a defendant to undertake substantial activities in reliance on the acquiescence." *Id.*, *citing McNeil Labs, Inc. v. Am. Home Prods. Corp.*, 416 F. Supp. 804, 809 (D.N.J. 1976); Jenn–Air Corp. v. Penn Ventilator Co., 464 F.2d 48 (3d Cir. 1972); *John Wright, Inc. v. Casper Corp.*, 419 F. Supp. 292 (E.D. Pa. 1976); Rudolf Callmann, The Law of Unfair Competition, Trademarks and Monopolies § 87.3(b) (3d ed. 1969). "The equitable defense of acquiescence '[a]s distinguished from laches, constitutes a ground for denial of relief only upon a finding of conduct on the plaintiff's part that amounted to an assurance to the defendant, express or implied, that the plaintiff would not assert

---

[2] The foregoing discussion of copyright duplication of the images onto shower curtains and skate board decks anticipates Plaintiff's reply that those uses are different under *Maloney* than posters, prints, artwork and NFTs because they are "products." If Plaintiff is successful in making the distinction, Plaintiff's right of publicity claim, and preliminary injunction request, still fail for all of the other reasons set forth in the opposition.

his trademark rights against the defendant.'" *Russen*, 513 F. Supp. at 1351, *citing Carl Zeiss Stiftung v. VEB Carl Zeiss Jena*, 433 F.2d 686, 704 (2d Cir.1970).

Chi Modu began licensing his photos of Mr. Wallace in the U.S. and abroad since the 1990s' without any objection from Mr. Wallace's family until this lawsuit in 2019. Modu Decl. ¶ 15. Modu also licensed Mr. Wallace's photos to Remrylie, Inc. for a period of eight years, during which time it was implied that neither Plaintiff nor its' predecessors or agents were asserting any right of publicity for the photos against Modu. *Id.* ¶ 16. Modu enjoyed a cooperative relationship with the Wallace family up until 2018 when Modu asked for renewed terms to the 2015 license of Mr. Wallace's photograph. *Id.* 18-20. Only following failed negotiations, did Plaintiff begin to assert its rights for the first time over Mr. Wallace's right of publicity and likeness. *Id.* ¶ 26.

Accordingly, Plaintiff's motion for preliminary injunction must also fail for laches and Plaintiff's acquiescence in the subject uses.

C.     **Plaintiff Cannot Show a Likelihood of Success on the Merits Because No Use About Which Plaintiff Complains Is Likely to Cause Damage to the Commercial Value of Mr. Wallace's Persona**

As Plaintiff admits, one of the elements Plaintiff is required to prove to prevail on a claim for misappropriation of Mr. Wallace's identity or persona under New Jersey common law is the "likelihood that the use will cause damage to the commercial value of that persona." *See Prima v. Darden Rests., Inc.*, 78 F. Supp. 2d 337 (D.N.J. 2000). Plaintiff has submitted no admissible evidence to support a claim that the allegedly infringing uses identified in the motion will cause commercial damage to the value of Mr. Wallace's persona. Section 3.B.4 of Plaintiff's Memorandum relies solely on speculation to support an entirely different conclusion: that "Plaintiff has been injured." Section 3.C. of Plaintiff's Memorandum, and the Wallace Declaration in support, include solely inadmissible conclusory statements about alleged "harm to reputation." Mr. Modu was a legendary hip hop photographer. The high quality and reputation of Mr. Modu's photographs contributed to bolstering

1  Mr. Wallace's persona and reputation. Mr. Modu's photographs of Mr. Wallace, and
2  all the uses about which Plaintiff complains, added—and still add—to the commercial
3  value of Mr. Wallace's *persona*.

4       Accordingly, Plaintiff's motion for preliminary injunction must also fail
5  because the subject uses have not and are not likely to cause damage to the commercial
6  value of Mr. Wallace's persona.

7       **D.**   **Plaintiff Cannot Show Irreparable Harm Absent Entry of a**
8            **Preliminary Injunction**

9       Plaintiff also cannot show irreparable harm for all the reasons why it cannot
10  show damage to the commercial value of Mr. Wallace's persona. In addition, as set
11  forth above, the only "uses" at issue are reproductions of Mr. Modu's iconic and
12  copyrighted photographs which cannot form the basis for an irreparable harm analysis
13  for all the reasons set forth above. Moreover, to the extent the shower curtains or skate
14  board decks may be treated differently, which Mrs. Modu denies, Plaintiff does not
15  demonstrate with admissible evidence how uses on shower curtains or skate board
16  decks, ***bearing the iconic copyrighted images of Mr. Wallace***, cause irreparable harm
17  to the Plaintiff. If shower curtain or skate board sales are not preempted, or
18  Mrs Modu's other defenses to infringement fail, the "harm" to Plaintiff would be
19  redressable in money damages.

20       **E.**   **Plaintiff Cannot Show that the Balance of Equities Favors Entry**
21            **of a Preliminary Injunction**

22       As set forth above, Plaintiff's right of publicity claims are suspect. They are
23  likely preempted in total. Plaintiff and its predecessors allowed Mr. Modu to use the
24  images commercially for over a decade. The parties had a mutually beneficial
25  licensing arrangement for several years. Any harm Plaintiff may have suffered from
26  a certain use of Mr. Modu's iconic photographs of Mr. Wallace, since the licensing
27  agreement expired, that is not preempted, is redressable in money damages.
28  Accordingly, there is little weight to Plaintiff's "equity" claim. On the other hand,

1  Mrs. Modu is the owner of valuable rights in iconic photographs protected by the
2  Copyright Act. Plaintiff is anxious to appropriate those rights and its agents have even
3  attempted to bully Mrs. Modu for them. Modu Decl. ¶¶ 29,30; Enechi Decl. ¶¶ 12,14.
4  The balance of equities therefore weighs against entry of a preliminary injunction.

5  **IV.    CONCLUSION**

6        For all the foregoing reasons, Mrs. Modu respectfully requests that the Court
7  deny Plaintiff's motion for preliminary injunction.

8
9  Dated:  January 28, 2022               **ARENT FOX LLP**

10

11                                 By:        */s/David G. Bayles*
12                                      ALLAN E. ANDERSON
                                       DAVID G. BAYLES
13                                      ROSS J. CHARAP
                                       Attorneys for Defendant and
14                                      Counterclaimant SOPHIA A. MODU

15

16

17

18

19

20

21

22

23

24

25

26

27

28