UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV19-01946 JAK (KSx) | Date | June 3, 2022 |
| Title | Notorious B.I.G. LLC v. Yes. Snowboards et al. | | |

| | |
|---|---|
| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE |
| T. Jackson-Terrell | Not Reported |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:** **(IN CHAMBERS) ORDER RE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DKT. 79);**

**PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION (DKT. 181);**

**PLAINTIFF'S MOTION FOR SANCTIONS (DKT. 186)**

**I.    Introduction**

On March 15, 2019, Plaintiff Notorious B.I.G., LLC ("Plaintiff") filed this action against Chi Modu ("Chi" or "Decedent"), a self-represented litigant. Dkt. 1.[1] On June 20, 2019, Plaintiff filed a First Amended Complaint ("FAC"), the operative complaint here. Dkt. 32. The FAC asserts six causes of action: (1) unfair competition and false endorsement, in violation of 15 U.S.C. § 1125(a); (2) trademark infringement; (3) a violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et. seq.*; (4) a violation of the right of publicity under New Jersey law; (5) unjust enrichment; and (6) injunctive relief. *Id.* ¶¶ 36-78.

On February 11, 2020, Chi filed a motion for summary judgment. Dkt. 79 (the "Summary Judgment Motion"). On March 3, 2020, Plaintiff filled an opposition. Dkt. 90. On March 17, 2020, Chi filed a reply. Dkt. 99.

On May 19, 2021, Chi passed away. Dkt. 149 (Statement of Death). On October 18, 2021, Sophia A. Modu ("Sophia" or "Defendant"), Chi's widow and successor-in-interest, was substituted as a Defendant. Dkt. 164. Defendant then retained counsel. Dkts. 150, 151.

On December 14, 2021, Plaintiff filed a motion for a preliminary injunction. Dkt. 181 (the "Preliminary Injunction Motion"). On January 28, 2022, Defendant filed an opposition. Dkt. 188. On March 14, 2022, Plaintiff filed a reply. Dkt. 190.

---

[1] The action was originally also brought against Yes. Snowboards, Nidecker Group, Nidecker SA and Nidecker US, Inc. Dkt. 32. On August 17, 2020, pursuant to a stipulation by the parties, those defendants were dismissed. Dkts. 122, 123.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV19-01946 JAK (KSx) | Date | June 3, 2022 |
| Title | Notorious B.I.G. LLC v. Yes. Snowboards et al. | | |

On January 14, 2022, Plaintiff filed a motion for sanctions against Defendant. Dkt. 186 (the "Sanctions Motion"). On February 18, 2022, Defendant filed an opposition. Dkt. 189. On March 25, 2022, Plaintiff filed a reply. Dkt. 191.

A hearing on the Preliminary Injunction Motion and the Sanctions Motion was held on May 9, 2022, at which the parties were directed to file supplemental briefing as to certain issues. Dkt. 199. On May 25, 2022, the parties filed their respective supplemental briefs. Dkts. 202, 204.

For the reasons stated in the Order, the Preliminary Injunction Motion is **GRANTED IN PART**. It is **GRANTED** as to Defendant's sale of merchandise featuring an image of Christopher Wallace, including but not limited to, skateboards and shower curtains. The Motion is **DENIED** as to Defendant's sale of reproductions of photographs of Wallace, including posters, prints and Non-Fungible Tokens ("NFTs").

The Summary Judgment Motion is **DENIED**.

The Sanctions Motion is **GRANTED IN PART**. The Sanctions Motion is **GRANTED** to the extent that Defendant has been ordered to comply with this Court's previous orders. Plaintiff is also permitted to file a motion for an award of attorney's fees and costs incurred in bringing the Sanctions Motion.

## II.   Factual Background

Christopher Wallace ("Wallace"), professionally known as Notorious B.I.G. or Biggie, was a well-known hip hop artist who passed away in 1997. Dkt. 32 ¶¶ 1, 23. Chi was a professional photographer, well-known for photographing popular hip hop artists in the 1990s, including Wallace. Dkt. 188-3 ¶¶ 4-5 (Sophia Modu Decl.).

It is alleged that Plaintiff is a Delaware limited liability company that owns and controls the intellectual property rights that were included in Wallace's estate, and is the successor-in-interest to his estate. Dkt. 32 ¶¶ 10, 22-24. It is alleged that, *inter alia*, Plaintiff owns the right of publicity in and to the name, image, voice, signature and likeness of Wallace. *Id.* ¶¶ 20, 23.

It is alleged that Plaintiff has licensed those intellectual property rights in connection with various products including apparel, novelties, beverages, tobacco, toys and posters, and that Plaintiff receives substantial licensing fees in connection with those licensed uses. *Id.* ¶ 25. It is alleged that Plaintiff has engaged in an exclusive license with Republic Licensing, Inc. ("Republic") in connection with the manufacture, promotion and sale of apparel and other goods. *Id.* ¶ 32.

It is alleged that Chi and Defendant have sold "Infringing Products," which are defined as "posters, prints and other artwork," including an archival glicee print of a photograph taken by Chi in 1996 of Wallace standing with the New York City skyline in the background. *Id.* ¶¶ 6, 27. In support of the Preliminary Injunction Motion, Plaintiff also contends that Chi and Defendant have sold merchandise bearing Wallace's image, such as shower curtains and snowboards, and that Plaintiff discovered in November 2021 that Defendant has sold and continues to sell NFTs derived from Chi's photographs. Dkt. 181 at 16, 18.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV19-01946 JAK (KSx) | Date | June 3, 2022 |
|---|---|---|---|
| Title | Notorious B.I.G. LLC v. Yes. Snowboards et al. | | |

It is alleged that Chi and Defendant never sought authorization from Plaintiff to use its intellectual property rights, and that Chi and Defendant intentionally, and in bad faith, sold the infringing products for their own financial gain. Dkt. 32 ¶¶ 28-30.

It is alleged that Defendant's actions have jeopardized and diminished the value of the exclusive license granted to Republic, which has caused a decrease in the value of Plaintiff's property rights. *Id.* ¶ 33. It is alleged that Defendant's conduct has caused, and will continue to cause, substantial irreparable injury to Wallace's reputation and harm to the value of future endorsement and partnership opportunities available to Plaintiff. *Id.* ¶ 34.

### III.     Procedural History

On or about August 2, 2019, Plaintiff propounded certain discovery requests directed to Chi, including requests for the production of documents ("RFPs") and interrogatories. Dkt. 131 at 8; *see* Dkt. 186-7 (RFPs); Dkt. 186-8 (interrogatories).

Based on Chi's continued failures to respond in an appropriate manner, proceedings were conducted by Magistrate Judge Stevenson. During that process, Judge Stevenson entered several orders that required Chi to produce documents in response to the RFPs. On December 12, 2019, Judge Stevenson ordered Chi to provide supplemental responses to the RFPs. Dkt. 66. At that time, Judge Stevenson also directed that Chi "closely review" Fed. R. Civ. P. 33 and 34 to seek a better understanding of his obligations to respond to discovery requests. *Id.* Subsequently, on July 30, 2020, Judge Stevenson granted Plaintiff's Motion to Compel. Dkt. 104; Dkt. 120 (the "July 2020 Order"). That order required Modu to produce, within 14 days, all non-privileged documents responsive to the RFPs or, where appropriate, to state whether any responsive documents had been withheld and, if so, the basis for doing so. *Id.*

On April 26, 2021, the Court granted in part Plaintiff's motion for sanctions against Chi, due to Chi's continued failure to comply with Judge Stevenson's orders, including the July 2020 Order. Dkt. 138 (the "April 2021 Order"). The April 2021 Order stated that Chi had failed to produce documents related to his collaborations with Urban Outfitters, Inc. and David Helwani to sell t-shirts bearing images of Wallace. *Id.* at 1-2. The April 2021 Order determined that such documents were responsive to the RFPs. *Id.* at 2. Another order then issued that compelled Chi to produce all non-privileged documents responsive to the RFPs. *Id.* Plaintiff's request for terminating sanctions was not granted in light of the availability of less drastic measures. These included the imposition of $5000 in sanctions against Chi, which were to be paid to the Clerk of Court. *Id.* Plaintiff's request to file a motion for attorney's fees and costs with respect to the discovery matters was also approved. *Id.*

After Defendant retained counsel, on September 13, 2021, Defendant provided supplemental responses to Plaintiff's RFPs and interrogatories, and produced more than 700 pages of documents. Dkt. 189-1 ¶¶ 1-2 (Charap Decl.). On November 4, 2021, Defendant paid the $5000 in sanctions as required by the April 2021 Order. *Id.* ¶ 4.

In November 2021, Plaintiff discovered that Chi and Defendant had sold and continued to receive

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV19-01946 JAK (KSx) | Date | June 3, 2022 |
| Title | Notorious B.I.G. LLC v. Yes. Snowboards et al. | | |

commission revenue for re-sales of NFTs bearing Wallace's image. Dkt. 186-1 ¶ 6-7 (Riordan Decl.). On January 14, 2022, Plaintiff filed the present Sanctions Motion, based on Defendant's alleged continued failure to produce all documents responsive to Plaintiff's discovery requests, including documents related to the NFTs. Dkt. 186.

### IV.  Analysis

#### A.  Preliminary Injunction Motion

##### 1.  Legal Standards

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citing *Munaf v. Geren*, 553 U.S. 674, 689-690 (2008)). In determining whether to grant such relief, a court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Id.* (quoting *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 542 (1987)).

To warrant the issuance of a preliminary injunction, the moving party must establish: (1) it is likely to succeed on the merits of its underlying claims; (2) it is likely to suffer irreparable harm unless the requested preliminary injunctive relief is granted, *i.e.*, for the time period between granting the relief and the conclusion of the action; (3) the balance of the equities between the parties tips in its favor; and (4) an injunction is in the public interest. *See Am. Trucking Ass'ns, Inc. v. City of L.A.*, 559 F.3d 1046, 1052 (9th Cir. 2009) (citing *Winter*, 555 U.S. at 20). Alternatively, where a plaintiff establishes "serious questions going to the merits" and demonstrates "a balance of the hardships that tips sharply towards the plaintiff", a preliminary injunction is warranted "so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

*Cottrell* determined that the "serious questions" test, which requires lower indicia of success on the merits than the "likelihood of success" formulation required by *Winter*, survived *Winter*'s holding provided two conditions are met. First, the balancing of the equities must tip "sharply" in favor of plaintiff. Second, the other two *Winter* factors -- irreparable harm and the public interest -- must be met. See *Farris v. Seabrook*, 677 F.3d 858, 864-65 (9th Cir. 2012) (clarifying *Cottrell* test). "The Ninth Circuit has held that courts may 'balance' 'the elements of the preliminary injunction test . . . so that a stronger showing of one element may offset a weaker showing of another.'" *WeRide Corp. v. Kun Huang*, 379 F. Supp. 3d 837, 846 (N.D. Cal. 2019) (quoting *Cottrell*, 632 F.3d 1127 at 1131-32).

##### 2.  Application

###### a)  Likelihood of Success on the Merits

The sole basis for the relief sought in the Preliminary Injunction Motion is the cause of action for an alleged violation of the common law right of publicity under New Jersey law. Under that law, the right of publicity "signifies the right of an individual, especially a public figure or a celebrity, to control the commercial value and exploitation of his name and picture or likeness and to prevent others from

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV19-01946 JAK (KSx) | Date | June 3, 2022 |
|---|---|---|---|
| Title | Notorious B.I.G. LLC v. Yes. Snowboards et al. | | |

unfairly appropriating this value for commercial benefit." *McFarland v. Miller*, 14 F.3d 912, 918 (3d Cir. 1994) (internal quotation marks and citations omitted); *see also Edison v. Edison Polyform Mfg. Co.*, 67 A. 392 (N.J. Ch. 1907).[2]

The elements of a right of publicity claim under New Jersey common law include: (1) the plaintiff "owns an enforceable right in the identity or persona" at issue; (2) the defendant "without permission" used "some aspect" of that identity or persona such that the identity or persona is "identifiable" from the defendant's use; and (3) the defendant's use is "likely to cause damage to the commercial value of that persona." *Prima v. Darden Rests., Inc.*, 78 F. Supp. 2d 337, 349 (D.N.J. 2000) (internal quotation marks and citation omitted).

(a)  Whether the Copyright Act Preempts the Claim

Defendant argues that the right of publicity claim is preempted by Section 301 of the Copyright Act. The basis for this position is that the claim is premised on alleged interference with the reproduction and distribution of copyrighted photographs. *See* Dkt. 188 at 9-15.

(i)  Legal Standards

The Ninth Circuit has established a two-part test to determine whether a state law claim is preempted by the Copyright Act. First, it must be determined "whether the 'subject matter' of the state law claim falls within the subject matter of copyright as described in 17 U.S.C. §§ 102 and 103." *Laws v. Sony Music Ent., Inc.*, 448 F.3d 1134, 1137 (9th Cir. 2006) (interpreting 17 U.S.C. § 301). Section 102 of the Copyright Act affords copyright protection to "original works of authorship fixed in any tangible medium of expression," including "pictorial, graphic, and sculptural works." 17 U.S.C. § 102.

Second, if the claim does fall within the subject matter of copyright, it must be determined "whether the rights asserted under state law are equivalent to the rights contained in 17 U.S.C. § 106, which articulates the exclusive rights of copyright holders." *Laws*, 448 F.3d at 1137-38. The exclusive rights provided in Section 106 include the right "to reproduce the copyrighted work in copies[,]" "to prepare derivate works[,]" "to distribute copies . . . to the public by sale or other transfer of ownership," and "to display the copyrighted work publicly." 17 U.S.C. § 106. "To survive preemption, the state cause of action must protect rights which are qualitatively different from the copyright rights. The state claim must have an extra element which changes the nature of the action." *Laws*, 448 F.3d at 1143 (internal quotation marks and citation omitted).

(ii)  Application

The first step of the preemption analysis, i.e., whether a publicity-right claim based on copyrighted photographs falls within the subject matter of copyright, "turns on *how* [the] copyrighted photograph is

---

[2] The parties have not presented an analysis as to the application of New Jersey law as to this issue. As noted, the FAC alleges such a claim, and Defendant has not contested the application of New Jersey law. Further, even if substantive California law were applied, in light of the forum and the location of certain of the alleged actions by Defendant, the outcome would be the same. Thus, the law of California and New Jersey on the relevant legal issues is the same. *See, e.g.*, *Abdul-Jabbar v. Gen. Motors Corp.*, 85 F.3d 407, 413-14 (9th Cir. 1996) (describing California common law right of publicity).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV19-01946 JAK (KSx) | Date | June 3, 2022 |
|---|---|---|---|
| Title | Notorious B.I.G. LLC v. Yes. Snowboards et al. | | |

used[,]" that is, "the way in which one's name or likeness is affected by the *use* of the copyrighted work." *Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1013 (9th Cir. 2017). After describing earlier decisions by the Ninth Circuit regarding preemption of publicity-right claims, *Maloney* concluded that

> a publicity-right claim may proceed when a likeness is used non-consensually on merchandise or in advertising. But where a likeness has been captured in a copyrighted artistic visual work and the work itself is being distributed for personal use, a publicity-right claim is little more than a thinly disguised copyright claim because it seeks to hold a copyright holder liable for exercising his exclusive rights under the Copyright Act.

*Id.* at 1016.

The defendant in *Maloney* controlled the copyright to certain photographs of the plaintiffs. The defendant made those photographs available on its website where a consumer could purchase a non-exclusive license to download a copy of a selected photograph for "non-commercial art use." *Id.* at 1007-08. The license specifically excluded the right to use the plaintiffs' names or likenesses with an endorsement of a product or service, and the plaintiffs did not allege that their names or likeness "were ever used in connection with the sale of any merchandise … [or] advertising." *Id.* at 1008, 1018. Under these circumstances, *Maloney* held that the plaintiffs' publicity-right claims were preempted because they challenged "control of the artistic work itself" and fell within the subject matter of copyright. *Id.* at 1019.

*Downing v. Abercrombie & Fitch* reached a different outcome. It held that the plaintiffs' claims as to the right of publicity were not preempted because the use of the copyrighted photograph at issue "went well beyond mere republication of the photograph." *Laws*, 448 F.3d at 1141 (discussing *Downing v. Abercrombie & Fitch*, 265 F.3d 994 (9th Cir. 2001)). The photograph of the plaintiffs, who were surfers, was published in a surf-themed advertising campaign that also identified the plaintiffs by name and offered for sale the same t-shirts that the plaintiffs were wearing in the photograph. *Id.* Thus, *Downing* held the defendant used the photograph to "suggest[] that the surfers had endorsed Abercrombie's t-shirts[,]" and the basis of the publicity-right claim was not within the subject matter of copyright. *Id.* Although a "photograph itself, as a pictorial work of authorship, is subject matter protected by the Copyright Act[,]" a person's "name or likeness is not a work of authorship within the meaning of 17 U.S.C. § 102." *Downing*, 265 F.3d at 1003-04.

In the present action, the alleged infringing products at issue include posters, prints and NFTs of copyrighted photographs of Wallace, *i.e.*, physical and digital reproductions of those photographs.[3] These uses of the photographs are within the subject matter of the Copyright Act. They relate to the display and distribution of the copyrighted works themselves, without a connection to other

---

[3] Plaintiff argues that the NFTs are "not copies" because an NFT is a "non-interchangeable unit of data on a blockchain that cannot be replicated" and that serves as a "digital representation of an underlying asset . . . without transferring any rights in the underlying asset." Dkt. 190 at 13. NFTs are a relatively new technology. There is little case law that considers them in the context of copyright claims. However, as Plaintiff concedes, an NFT is a "digital representation" of the underlying asset, *i.e.*, the photographs at issue. Thus, for purposes of the Preliminary Injunction Motion, it is assumed that the NFTs fall within the subject matter of the Copyright Act, which permits copyright holders "to reproduce the copyrighted work" and "to prepare derivative works." 17 U.S.C. § 106.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV19-01946 JAK (KSx) | Date | June 3, 2022 |
| Title | Notorious B.I.G. LLC v. Yes. Snowboards et al. | | |

merchandise or advertising. That Defendant distributes the photographs for sale does not change the analysis; the purpose of the sale is to display and distribute the photographs. *See Maloney*, 853 F.3d at 1016 n.9 (defendant's decision to license photos for a fee "does not change the fact that the publicity-right claims target the *display* and *distribution* of copyrighted photographs for personal use."). "[C]opyright holders are allowed to commercially exploit their copyrights by exercising their exclusive rights under the Copyright Act." *Id.* Therefore, Defendant's publicity-right claim as to Plaintiff's posters, prints and NFTs is preempted.

The outcome is different as to other allegedly infringing products. These include shower curtains, skateboards and other merchandise that feature copyrighted photographs of Wallace. Plaintiff's use of Wallace's image to promote and sell such merchandise constitutes an "exploitation of his likeness on an unrelated product" for that purpose, which extends beyond "control of the artistic work itself." *Maloney*, 853 F.3d at 1016, 1019. A publicity-right claim "may proceed when a likeness is used non-consensually on merchandise[,]" including if the person's likeness is "placed on merchandise marketed by the user." *Id.* at 1016, 1018 (quoting Restatement (Third) of Unfair Competition § 47); *see also, e.g.*, *Carter v. Mannion*, No. CV 21-04848 PA (KSX), 2021 WL 6752256, at *5-6 (C.D. Cal. Sept. 8, 2021) (publicity-right claims based on sale of t-shirts and slipmats with plaintiff's image are not preempted by the Copyright Act). Thus, the basis for Plaintiff's claim as to Defendant's merchandise is not limited to the reproduction or dissemination of the photographs themselves, but is the exploitation of Wallace's likeness to sell consumer products, including shower curtains and skateboards.

Defendant argues that the analysis of *In re Jackson*, 972 F.3d 25 (2d. Cir. 2020) should be applied, which would result in a different outcome. Dkt. 188 at 13-15. A consideration of *In re Jackson* does not change the preemption analysis based on the facts presented. *In re Jackson* relied on cases including *Maloney* and *Downing* in concluding that the "pertinent distinction" for preemption is whether "the defendant's use of a work involving the plaintiff's likeness seeks advantage for defendant on the basis of the plaintiff's identity[,]" such as where "the value of what the defendant distributes lies in its reference to the identity of the plaintiff shown." *In re Jackson*, 972 F.3d at 48-49. Here, Defendant seeks to obtain commercial advantage in its sale of merchandise by including Wallace's likeness on its products. They are offered for sale as more than simply a reproduction of the image.

For the foregoing reasons, it is determined that Plaintiff's publicity-right claim as to Defendant's use of Wallace's image and likeness on merchandise, including shower curtains and skateboards, is not preempted by the Copyright Act. However, the publicity-right claim is preempted to the extent it is based on Defendant's posters, prints and NFTs.

                                                           (b)      Likelihood of Damage to the Commercial Value of Wallace's Persona

As to the elements of the publicity-right claim, Defendant does not dispute that the first two elements have been met: Plaintiff holds an enforceable right in Wallace's identity or persona, and Defendant has used some aspect of that identity or persona without Plaintiff's permission. Instead, Defendant argues that its use is unlikely to cause damage to the commercial value of Wallace's persona, because the high quality and reputation of Chi's photographs contribute to "bolstering" Wallace's persona and add to its commercial value. Dkt. 188 at 16-17.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV19-01946 JAK (KSx) | Date | June 3, 2022 |
|---|---|---|---|
| Title | Notorious B.I.G. LLC v. Yes. Snowboards et al. | | |

Defendant's argument is unpersuasive. Plaintiff has sufficiently shown that it sells merchandise similar to that sold by Defendant to a shared consumer base interested in products featuring Wallace's likeness. Plaintiff has sufficiently shown that it likely lost and continues to lose revenue through consumers who purchase products from Defendant's website instead of from Plaintiff. Moreover, Plaintiff has shown that it has an exclusive licensing agreement with Republic, which is a non-party. That license applies to the marketing and sale of products bearing the image and likeness of Wallace. The use and sales by Defendant of other products logically reduces the value of the exclusive license; Defendant is usurping a right granted by Plaintiff to Republic. Thus, even if the use of Defendant's photographs on merchandise provides "some value" to Wallace's persona, that "does not diminish our conclusion that the primary purpose of [D]efendant's activity is to appropriate the commercial value of the likeness of [Wallace]." *See Presley's Est. v. Russen*, 513 F. Supp. 1339, 1360 (D.N.J. 1981). Defendant has provided no evidence that would support a determination that its actions, or those of Chi, have increased the commercial value of Plaintiff's right of publicity.

Therefore, Plaintiff has shown a sufficient likelihood of success on the merits of its claim that Defendant's activity has damaged and continues to damage the commercial value of Plaintiff's right of publicity.

\* \* \*

For the foregoing reasons, Plaintiff has established a likelihood of success on the merits on the right of publicity claim.

        (c)      Whether Plaintiff's Claim is Barred by Acquiescence or Laches

            (i)      <u>Legal Standards</u>

"[O]nce the moving party has carried its burden of showing a likelihood of success on the merits, the burden shifts to the non-moving party to show a likelihood that its affirmative defense will succeed." *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1158 (9th Cir. 2007). New Jersey recognizes the affirmative defenses of laches and acquiescence to claims for right of publicity. *See Presley's Est.*, 513 F. Supp. at 1351-52 (analyzing the application of laches and acquiescence defenses to right of publicity claim).

"[T]he equitable defenses of acquiescence and laches are very similar." *Seller Agency Council, Inc. v. Kennedy Ctr. for Real Est. Educ., Inc.*, 621 F.3d 981, 988 (9th Cir. 2010).

"Laches is an equitable time limitation on a party's right to bring suit, resting on the maxim that one who seeks the help of a court of equity must not sleep on his rights." *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 835 (9th Cir. 2002) (internal citations and quotation marks omitted). A determination of laches is made "with reference to the limitations period for the analogous action at law." *Id.* "If the plaintiff filed within that period, there is a strong presumption against laches. If the plaintiff filed outside that period, the presumption is reversed." *Tillamook Country Smoker, Inc. v. Tillamook Cty. Creamery Ass'n*, 465 F.3d 1102, 1108 (9th Cir. 2006) (citation omitted). To establish that laches bars a claim, a defendant must "prove both an unreasonable delay by the plaintiff and prejudice to itself." *Evergreen*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV19-01946 JAK (KSx) | | Date | June 3, 2022 |
|---|---|---|---|---|
| Title | Notorious B.I.G. LLC v. Yes. Snowboards et al. | | | |

*Safety Council v. RSA Network Inc.*, 697 F.3d 1221, 1226 (9th Cir. 2012) (quotation omitted). "Delay is to be measured from the time that the plaintiff knew or should have known about the potential claim at issue." *Kling v. Hallmark Cards, Inc.*, 225 F.3d 1030, 1036 (9th Cir. 2000).

"Acquiescence, on the other hand, limits a party's right to bring suit following an *affirmative* act by word or deed by the party that conveys implied consent to another." *Seller Agency Council*, 621 F.3d at 988. To establish acquiescence, a defendant must show: (1) the plaintiff "actively represented that it would not assert a right or a claim; (2) the delay between the active representation and assertion of the right or claim was not excusable; and (3) the delay caused the defendant undue prejudice." *Id.* at 989.

(ii)  <u>Application</u>

Defendant argues that Plaintiff's claim is barred by the affirmative defenses of laches and acquiescence. In support of this position, Defendant contends that Chi began selling merchandise featuring his photographs of Wallace as early as 2004. Dkt. 204 at 18. Defendant argues that Plaintiff, Wallace and Wallace's family were aware of Chi's activities but did not object until 2019. Defendant contends that is when the negotiations between Chi and Plaintiff's marketing company, Remrylie, Inc., to renew a licensing agreement for use of Chi's photographs were not successful. *Id.* at 13-17.

To demonstrate Chi's long-standing activities, Defendant provides evidence from July and August 2004 of Chi's sales of t-shirts featuring photographs of Wallace. Ex. 7, Dkt. 204-3 at 13-17 (t-shirt order forms). Defendant also provides evidence that Chi began selling posters of those photographs in 2006, first on eBay and then his own website. *See, e.g.*, Ex. 10, Dkt. 204-3 at 25 (eBay listing). In 2018, Chi entered an agreement with Yes. Snowboards with respect to the production and sale of snowboards featuring Chi's photographs of Wallace. Ex. 16, Dkt. 204-4 at 14-20 (emails and contract with Yes.). Between 2011 and 2018, Chi also licensed the use of photographs of Wallace to Remrylie, Inc., Plaintiff's marketing company. *See* Dkt. 188-3 ¶¶ 16-17 (Sophia Modu Decl.); Exs. A, B, C, Dkt. 188-3 at 11-21 (copies of licensing agreements with Remrylie, Inc.).

Defendant argues that, given Chi's extensive licensing activities and Plaintiff's own descriptions of its 20-year efforts to develop and manage Wallace's brand, *see, e.g.*, Dkt. 181-3 (Volleta Wallace Decl.), Plaintiff knew or must have known about Chi's use of the photographs well before this action was filed. Dkt. 204 at 13-17.

As to Plaintiff's actual knowledge of Chi's activities, Defendant provides limited evidence. Specifically, Defendant states that Rick Barlowe, a Remrylie, Inc., executive, was aware of Chi's use of Wallace's image on skateboards and even "took the skateboard idea from Chi in 2015 and tried to beat Chi to market" by also selling skateboards featuring an inferior-quality photograph of Wallace. Dkt. 204-1 ¶¶ 2-3 (Sophia Modu Decl.). In support of this position, Defendant has proffered a side-by-side comparison of the images on the skateboards marketed by Plaintiff and Chi. Ex. 2, Dkt. 204-2 at 10. Defendant also contends that Barlowe told Chi that he "knew about the [Yes. Snowboard] deal and assured Chi all would be alright [sic]" and that "he just wanted advance notice of such deals so he wouldn't be embarrassed." Dkt. 204-1 ¶ 15 (Sophia Modu Decl.).

The evidence presented is insufficient to establish a likelihood that Plaintiff knew of Chi's use of Wallace's image on merchandise. Nor is it sufficient as to whether Plaintiff acquiesced to that use.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV19-01946 JAK (KSx) | Date | June 3, 2022 |
| Title | Notorious B.I.G. LLC v. Yes. Snowboards et al. | | |

Although Sophia declares that Plaintiff was aware of Chi's skateboards in 2015, and that Plaintiff acquiesced to Chi's agreement with Yes. Snowboards, there is no corroborating evidence from non-parties. The comparison of the images of the skateboards does not show Plaintiff's awareness of Chi's skateboard. Further, the e-mail correspondence between the parties regarding the snowboard transaction suggests that Plaintiff first learned about the snowboards in September 2018. *See* Ex. D, Dkt. 188-3 at 22-24. Nor is there evidence that Plaintiff approved of Defendant's transaction. *Id.*

Chi's licenses to Remrylie, Inc., are also insufficient at this time to demonstrate Plaintiff's knowledge or acquiescence. The licenses specifically granted to Remrylie, Inc., "the non-exclusive right to use the Photos in connection with any and all merchandise (excluding phonograph record albums and DVD covers)." Exs. A-C, Dkt. 188-3 at 12 (2011 license), 15 (2013 license), 19 (2015 license). However, they did not include any authorization from Plaintiff to Chi to use Wallace's name, image or likeness.

Defendant has also failed to provide evidence sufficient to establish that Plaintiff should have known about Chi's activities. For example, there is limited evidence as to the pervasiveness of Chi's use of his photographs on merchandise since 2004. Nor is there evidence as to Plaintiff's monitoring of its competitors or about its own merchandising activities that would have led to the discovery of Chi's activities.

Based on the present record, there are other limitations on Defendant's laches and acquiescence arguments. For example, Defendant has not presently provided specific evidence or arguments as to whether the delay in the commencement of this action was unreasonable, or why the alleged delay resulted in any prejudice to Defendant.

Therefore, based on the current record, Defendant has failed to establish a likelihood of success on the affirmative defenses of laches or acquiescence.

\* \* \*

For the foregoing reasons, Plaintiff has established a likelihood of success on the merits of its right of publicity claim. Defendant has failed to establish a likelihood of success on the affirmative defenses of laches or acquiescence. This factor weighs in favor of granting the Preliminary Injunction Motion.

    b)  Likelihood of Irreparable Harm

      (1)  <u>Legal Standards</u>

*Winter* requires that "plaintiffs must establish that irreparable harm is *likely*, not just possible, in order to obtain a preliminary injunction." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) (emphasis in original). "Mere financial injury does not constitute irreparable harm if adequate compensatory relief will be available in the course of litigation." *Premier Nutrition, Inc. v. Organic Food Bar, Inc.*, 475 F. Supp. 2d 995, 1007 (C.D. Cal. 2007) (citations omitted). "Alleged harm that is remote or speculative will not be considered irreparable; rather, the movant must demonstrate that the threatened harm is imminent." *Lilith Games (Shanghai) Co. Ltd. v. UCool, Inc.*, No. 15-CV-01267-SC, 2015 WL 5591612, at \*10. However, "[l]oss of goodwill, as well as damage to reputation, can support a finding of irreparable harm." *Id*. at \*11; *see also Pyro Spectaculars N., Inc. v. Souza*, 861 F. Supp. 2d

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV19-01946 JAK (KSx) | | Date | June 3, 2022 |
|---|---|---|---|---|
| Title | Notorious B.I.G. LLC v. Yes. Snowboards et al. | | | |

1079, 1092 (E.D. Cal. 2012) ("[I]ntangible injuries, such as damage to ongoing recruitment efforts and goodwill, qualify as irreparable harm.") (quotation omitted).

Under New Jersey law, "[b]ecause the doctrine of the right of publicity emphasizes the protection of the commercial value of the celebrity's name or likeness, the plaintiff must demonstrate sufficiently that the defendant's use of the name and likeness of the celebrity has or is likely to result in an identifiable economic loss" in order to demonstrate the likelihood of irreparable injury. *Presley's Est.*, 513 F. Supp. at 1378. "Public deception or confusion" regarding the source of the allegedly wrongful activity is insufficient without a showing of economic harm. *Id.*

(2)  Application

Plaintiff argues that, absent the entry of a preliminary injunction, it will suffer irreparable harm because Defendant's sales of merchandise deprive Plaintiff "of the ability to preserve [Wallace's] legacy and the reputation of the [Wallace] brand." Dkt. 181 at 19.

Financial injury to Plaintiff, alone, is insufficient to demonstrate a likelihood of irreparable harm. As discussed above, Plaintiff has demonstrated that, absent the entry of the requested injunctive relief, it likely will continue to suffer economic harm, including lost sales and reduced licensing fees. *See* Dkt. 181-3 ¶¶ 9-10 (Volleta Wallace Decl.). *Presley's Estate* concluded that irreparable injury would result from similar economic harm caused by the defendant's continued sales of pendants and records bearing the plaintiff's likeness. *See Presley's Est.*, 513 F. Supp. at 1379-80. However, Plaintiff has not provided any evidence as to the nature and scope of these harms, or why such economic harms could not be remedied by an award of monetary damages.

Plaintiff also contends that Defendant's sale of allegedly unauthorized merchandise jeopardizes Plaintiff's ability to manage and maintain Wallace's legacy and the reputation of the Wallace brand. Dkt. 181 at 19-20. Plaintiff has submitted evidence that it has invested approximately 20 years and substantial resources in building Wallace's persona and brand. This includes licensing trademarks, and exercising the rights of association, sponsorship and publicity to Wallace's likeness in connection with a wide range of merchandise. *Id.* at 7-8. Plaintiff contends that it has taken these steps while "ensur[ing] that it only collaborates with companies that maintain the legacy of [Wallace] and not those who may harm the reputation of the [Wallace] brand name." Dkt. 181-3 ¶ 7 (Volleta Wallace Decl.). "[A] celebrity's property interest in his name and likeness is unique, and cannot be adequately compensated by money damages." *Michaels v. Internet Ent. Grp., Inc.*, 5 F. Supp. 2d 823, 838 (C.D. Cal. 1998).

This evidence is sufficient to establish that Plaintiff is likely to suffer some irreparable reputational harm to Wallace's public persona, due to Defendant's activities. Plaintiff has presented sufficient evidence of its investment of substantial time and resources over many years in establishing Wallace's public persona. It has also presented material evidence regarding how its ability to benefit from these efforts will be harmed if Wallace's image and likeness is exploited by Defendant.

For the foregoing reasons, this factor weighs slightly in favor of granting the Preliminary Injunction Motion.

c)  Balance of Equities

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV19-01946 JAK (KSx) | Date | June 3, 2022 |
| Title | Notorious B.I.G. LLC v. Yes. Snowboards et al. | | |

As discussed above, Plaintiff has demonstrated the likelihood that it will suffer some irreparable injury from its loss of control over Wallace's image and likeness if a preliminary injunction does not issue.

The resulting hardships to Defendant would involve ceasing sales of some of its merchandise bearing Wallace's image. This would result in a monetary loss. It could also affect Defendant's ability to continue to conduct business with certain of its customers now and in the future. The evidence of those limitations is limited. These potential harms can be addressed by the narrow scope of the preliminary injunctive relief. It would apply only to sales of merchandise bearing Wallace's image. Defendant's other revenue streams, including its prints, posters, and NFTs of Wallace, as well as its products that do not feature Wallace, would not be restricted. In light of this, the hardship to Plaintiff, in the form of intangible reputational harm, is more significant than Defendant's limited economic hardship.

For the foregoing reasons, the balance of the equities favors granting the Preliminary Injunction Motion.

        d)      Public Interest

"[I]t would not serve the public interest to allow a person to exploit a celebrity's name and likeness for commercial gain when that person does not have the authorization to do so." *Kelly v. Primco Mgmt., Inc.*, No. CV 14-07263 BRO (SHx), 2015 WL 10990368, at *16 (C.D. Cal. Jan. 12, 2015). Thus, this factor weighs in favor of granting the Preliminary Injunction Motion.

        \*      \*      \*

For the reasons stated in this Order, Plaintiff has demonstrated a likelihood of success on the merits as to some of Defendant's products, and that the balance of equities and the public interest weigh in its favor.

Therefore, the Preliminary Injunction Motion is **GRANTED IN PART**. The Motion is **GRANTED** as to Defendant's sale of merchandise featuring Wallace's image, including, but not limited to, skateboards and shower curtains. The Motion is **DENIED** as to Defendant's sale of reproductions of her photographs of Wallace, including posters, prints and NFTs.

      B.      Summary Judgment Motion

The Summary Judgment Motion seeks judgment in favor of Defendant as to all the claims in this action. However, as discussed above, Plaintiff has provided sufficient evidence to establish a likelihood of success on the merits as to its right of publicity claim. This same evidence demonstrates that at this time there are genuine issues of material fact as to the matters raised in the Summary Judgment Motion.

The Motion for Summary Judgment is based primarily on the contention that, because Defendant owns valid copyright registrations to Chi's photographs, Plaintiff's claims are preempted by the Copyright Act. Plaintiff argues that there is a genuine factual dispute as to whether Defendant owns a valid copyright registration as to all of the photographs at issue. *See* Dkt. 90 at 14-16. However, even assuming such ownership by Defendant, that would not be dispositive of Plaintiff's claims. The Copyright Act does not

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV19-01946 JAK (KSx) | Date | June 3, 2022 |
|---|---|---|---|
| Title | Notorious B.I.G. LLC v. Yes. Snowboards et al. | | |

preempt Plaintiff's claims to the extent they are premised upon Defendant's use of the photographs on merchandise. There are also genuine questions of material fact as to whether the affirmative defenses of laches or acquiescence bar the claims, including when Plaintiff discovered Defendant's merchandise and whether Plaintiff unreasonably delayed in bringing this action.

For the foregoing reasons, Defendant's Summary Judgment Motion is **DENIED**.

    C.    Motion for Sanctions

        1.    <u>Legal Standards</u>

When a party fails to obey a discovery order, several sanctions are available under Fed. R. Civ. P. 37. They include terminating sanctions. Fed. R. Civ. P. 37(b)(2)(B). Terminating sanctions, which may include the dismissal of a claim or the entry of a default, are drastic measures. They are justified only where "the party's violations of the court's orders [are] due to wilfulness [sic] or bad faith." *Dreith v. Nu Image, Inc.*, 648 F.3d 779, 788 (9th Cir. 2011); *see also Computer Task Grp., Inc. v. Brotby*, 364 F.3d 1112, 1115 (9th Cir. 2004) (finding willfulness where defendant "engaged in a consistent, intentional, and prejudicial practice of obstructing discovery by not complying … with repeated court orders and not heeding multiple court warnings.") (internal quotation marks and citation omitted); *Consumer Fin. Prot. Bureau v. Morgan Drexen, Inc.*, 101 F. Supp. 3d 856, 868 (C.D. Cal. 2015) (a terminating sanction "is permitted when the disobedient party has 'willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice.'") (citation omitted).

The willfulness standard is met by showing that a party engaged in wrongful conduct that was within its control. *See, e.g.*, *Stars' Desert Inn Hotel & Country Club, Inc., v. Hwang*, 105 F.3d 521, 524-25 (9th Cir. 1997) (affirming entry of default judgment against defendant who failed to demonstrate that his failure to comply with an order of a magistrate judge to sit for a deposition was beyond his control); *Matter of Visioneering Const.*, 661 F.2d 119, 121 (9th Cir. 1981) (default judgment justified where party engaged in "a litany of willful discovery abuses, including failure to attend a noticed deposition.").

When the non-moving party has engaged in willful misconduct, the Ninth Circuit has established five factors that a court must weigh in determining whether terminating sanctions are justified: "'(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions.'" *Dreith*, 648 F.3d at 788 (quoting *Malone v. U.S. Postal Serv.*, 833 F.2d 128, 130 (9th Cir. 1987)). When a party violates a court order, the first and second factors generally favor sanctions and the fourth factor weighs against them. *Computer Task Grp., Inc.*, 364 F.3d at 1115. Thus, the determination whether terminating sanctions are warranted often turns on the third and fifth factors. *See id.* Thus, terminating sanctions may be warranted "'where at least four factors support dismissal, or where at least three factors strongly support dismissal.'" *Dreith*, 648 F.3d at 788 (quoting *Yourish v. Cal. Amplifier*, 191 F.3d 983, 990 (9th Cir. 1999)). "The most critical factor to be considered in case-dispositive sanctions is whether 'a party's discovery violations make it impossible for a court to be confident that the parties will ever have access to the true facts.'" *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1097 (9th Cir. 2007) (quoting *Valley Eng'rs Inc. v. Elec. Eng'g Co.*, 158, F.3d 1051, 1058 (9th Cir. 1998)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV19-01946 JAK (KSx) | Date | June 3, 2022 |
| Title | Notorious B.I.G. LLC v. Yes. Snowboards et al. | | |

      2.    <u>Application</u>

           a)    L.R. 37-1 Meet and Confer Requirement

Local Rule 37-1 provides:

> Before filing any motion relating to discovery under F.Rs.Civ.P. 26-37, counsel for the parties must confer in a good-faith effort to eliminate the necessity for hearing the motion or to eliminate as many of the disputes as possible. It is the responsibility of counsel for the moving party to arrange for this conference. . . . The moving party's letter must identify each issue and/or discovery request in dispute, state briefly as to each such issue/request the moving party's position (and provide any legal authority the moving party believes is dispositive of the dispute as to that issue/request), and specify the terms of the discovery order to be sought.

Further, "counsel for the opposing party must confer with counsel for the moving party within ten days after the moving party serves a letter requesting such conference." *Id.*

Defendant argues that the Sanctions Motion should be denied because Plaintiff failed to satisfy the meet and confer requirement of L.R. 37-1. The parties agree that counsel for the parties exchanged email correspondence concerning Plaintiff's planned motion for preliminary injunction, which included a discussion of Plaintiff's demand that Defendant produce information regarding the NFTs at issue, and Plaintiff's intention to raise "this new infringement" claim and Defendant's "failure to disclose it." Dkt. 189 at 7-8; *see* Exs. A-G, Dkt. 189-1 at 4-17 (copies of emails). However, Defendant states that Plaintiff's counsel never advised Defendant's counsel that she was planning to file a motion for sanctions. Dkt. 189 at 8.

Although Plaintiff's counsel may not have expressly told Defendant about a planned motion for sanctions, nor specifically requested a conference regarding the motion, the record reflects that counsel for the parties discussed the substantive bases for the motion, including the "discovery request in dispute" and Plaintiff's position as to that dispute. L.R. 37-1; *see, e.g.*, Exs. E-G, Dkt. 189-1 at 12-17 (emails discussing whether NFTs are within the scope of Plaintiff's discovery requests). Thus, the purpose of L.R. 37-1, *i.e.*, "to eliminate the necessity for hearing the motion or to eliminate as many of the disputes as possible," was satisfied by the parties' email correspondence. L.R. 37-1.

Under these circumstances, and in order to promote party and judicial efficiency, including as to future proceedings in this matter, the Sanctions Motion is addressed on the merits.

           b)    Whether Plaintiff Failed to Produce All Relevant Documents

Defendant argues that the July 2020 Order and the April 2021 Order only applied to certain RFPs and interrogatories specified in Plaintiff's March 2020 motion to compel. Dkt. 189. at 6. Defendant argues that those RFPs only relate to "Infringing Products," and the interrogatories are only directed at "subject merchandise." *Id.* at 6-7; *see* Dkt. 186-7 (RFPs); Dkt. 186-8 (interrogatories). Defendant argues that documents related to the NFTs do not fall under the scope of those discovery requests because, as digital representations of Chi's copyrighted photographs, they are neither infringing products nor items

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV19-01946 JAK (KSx) | Date | June 3, 2022 |
|---|---|---|---|
| Title | Notorious B.I.G. LLC v. Yes. Snowboards et al. | | |

that contain Wallace's image. Dkt. 189 at 6-7.

Defendant's arguments are unpersuasive. The April 2021 Order held that documents related to Chi's t-shirt collaborations were responsive to Plaintiff's discovery requests. Dkt. 138 at 2. That same analysis applies here. Defendant does not deny that she has custody of, but has not produced, nonprivileged documents relating to the sale of the NFTs at issue. And Defendant's argument, that the NFTs are not infringing products or items containing Wallace's image because they are reproductions of copyrighted photos, is a restatement of Defendant's argument on the merits that Plaintiff's claims are preempted by the Copyright Act. As the April 2021 Order stated, the "contention by [Chi] that he will prevail on the merits of this action does not excuse noncompliance with his discovery obligations." *Id.* Plaintiff has made a sufficient showing that such documents are responsive to the RFPs.

Defendant's failure and refusal to produce documents related to the NFTs, and/or any other potential documents related to items bearing Wallace's likeness that are sold or licensed by Defendant, violates the April 2021 Order. At the May 9, 2022 hearing on the Preliminary Injunction Motion and Sanctions Motion, Defendant was ordered to comply with the Court's previous orders requiring Defendant to produce documents and further respond to Plaintiff's discovery requests. *See* Dkt. 199. Plaintiff may also file a motion for an award of attorneys' fees and costs in connection with bringing the Motion.

Terminating sanctions are not warranted given the availability of less drastic remedies. The need to sanction Defendant for her failure to comply with her discovery obligations and to deter future noncompliance must be balanced against her substitution in this action and her timely compliance with other court orders, including her payment of the $5000 sanction that was ordered previously. Those facts support providing Plaintiff with an opportunity to litigate this action on the merits.

Defendant is cautioned that future violations of a court order, discovery rules, or any other rule that applies in this action, could result in the imposition of terminating sanctions. *See* L.R 83-2.2.4 ("Failure to comply with the rules enumerated in L.R. 83-2.2.3 may be grounds for dismissal or judgment by default.").

\*   \*   \*

For the foregoing reasons, the Sanctions Motion is **GRANTED IN PART**. The Sanctions Motion is **GRANTED** to the extent that Defendant has been ordered to comply with this Court's previous orders. Plaintiff is also permitted to file a motion for an award of attorney's fees and costs incurred in bringing the Sanctions Motion. Any such motion shall be filed within 21 days of the issuance of this Order.

The Sanctions Motion is **DENIED** as to Plaintiff's request for terminating sanctions; provided, however, this is without prejudice to a renewal of these requests based on a showing of future non-compliance by Defendant with court orders.

**V.     Conclusion**

For the reasons stated in this Order, the Preliminary Injunction Motion is **GRANTED IN PART**. The Motion is **GRANTED** as to Defendant's sale of merchandise featuring Wallace's image, including but not limited to, skateboards and shower curtains. The Motion is **DENIED** as to Defendant's sale of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV19-01946 JAK (KSx) | Date | June 3, 2022 |
| Title | Notorious B.I.G. LLC v. Yes. Snowboards et al. | | |

reproductions of photographs of Wallace, including posters, prints and NFTs.

The Motion for Summary Judgment is **DENIED**.

The Sanctions Motion is **GRANTED IN PART**. The Sanctions Motion is **GRANTED** to the extent that Defendant has been ordered to comply with this Court's previous orders. Plaintiff is also permitted to file a motion for an award of attorney's fees and costs incurred in bringing the Sanctions Motion. Any motion shall be filed within 21 days of the issuance of this Order.

The Sanctions Motion is **DENIED** as to Plaintiff's request for terminating sanctions; provided, however, this is without prejudice to a renewal of these requests based on a showing of future non-compliance by Defendant with court orders.

**IT IS SO ORDERED.**

                                               : 

Initials of Preparer    tj